### UNITED STATES v. ONE BUICK AUTOMOBILE (three cases).

(District Court, S. D. California. July 22, 1924.)

**1. Internal revenue ☞46—Forfeiture of vehicles; provisions of internal revenue law not applicable to mere illegal transportation of liquor.**

The provisions of Rev. St. § 3450 (Comp. St. § 6352), for forfeiture of conveyances used in the removal or for concealment of articles with intent to defraud the United States of a tax due thereon, are applicable only where a taxable article is removed from one place to another or concealed, for the purpose of evading payment of the tax, and cannot be applied to the mere transportation of illicit liquor in violation of the Prohibition Act, unless the circumstances warrant a fair and reasonable inference that there was also an intent to defraud the United States of the tax payable on such liquor by the manufacturer thereof.

**2. Customs duties ☞130—Forfeiture of vehicle used for unlawful importation.**

An automobile used for the fraudulent importation into the United States of liquors without payment of the duty thereon, in violation of Tariff Act 1922, tit. IV, §§ 593b, 594 (U. S. Comp. St. Supp. 1923, §§ 5841h13, 5841h14), is subject to forfeiture under Rev. St. §§ 3061, 3062 (Comp. St. §§ 5763, 5764), and want of knowledge or consent on the part of the owner of its unlawful use is no defense to such forfeiture.

**3. Internal revenue ☞46—"Remove," as used in statute relating to forfeiture of vehicle used in removing goods to defraud United States of tax, defined.**

Under Rev. St. § 3450 (Comp. St. § 6352), relating to forfeiture of vehicles used in removal of goods with intent to defraud the United States of tax, the word "remove" implies some change in fixity of location, and is not the counterpart of "transport," as used in National Prohibition Act, but connotes some transfer of the thing involved from some definite place of manufacture, production, origin, or the like to some other place, whereat or wherefrom collection of tax on it might be less easily effected.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Remove—Removal.]

Forfeiture Libels. Three suits by The United States, each for the forfeiture of one Buick automobile. Libels dismissed in first two suits. Decree of forfeiture in third suit.

Joseph C. Burke, U. S. Atty., and J. E. Simpson, Asst. U. S. Atty., both of Los Angeles, Cal., for the United States.

Kemp, Mitchell, Silberberg & Davis, of Los Angeles, Cal., for claimant R. L. Lail.

Christian Hoeppner, of Fresno, Cal., for claimant Howard Automobile Co.

Joseph Musgrove and F. O. McGirr, both of Los Angeles, Cal., for claimant.

BLEDSOE, District Judge. These three cases, having to do with the asserted right of forfeiture of an automobile used in transporting liquor in violation of law, will be considered together.

In the first case the automobile was being operated either by or for one McGregor, who had agreed to obtain and deliver a comparatively small quantity of liquor to a person who afterwards turned out to be a federal prohibition agent. There is some conflict in the evidence as to whether McGregor, admittedly not the owner of the machine, was driving it at the time of the transportation of the liquor. Whether he actually drove it, however, or was merely riding with another who was the driver, is, in my judgment, immaterial, in view of the ultimate considerations involved. The automobile was owned by an auto rental company, which had in good faith and in pursuance of its regular business rented the automobile to one Fuller, for lawful use, and in the expectation, of course, that it would be used only for a lawful purpose. McGregor, apparently, was riding with Fuller as his guest. There was transported by the automobile, either lying upon the seat thereof, or in the pocket of McGregor, two pint bottles of illicit "moonshine" whisky, upon which apparently no distilling or other tax had been paid. The evidence shows that McGregor, who made the sale, went to a residence in Los Angeles, not shown to have been the place where the liquor was actually manufactured, or connected therewith, obtained the liquor and brought it to the appointed place for delivery, where it was delivered to the prohibition agent pursuant to the agreement theretofore had, whereupon the arrest was made and the automobile taken into custody, etc. Fuller is not shown to have been connected with the deal. The rental company, as owner of the automobile, resists its forfeiture.

In the second case, No. 210–J, the automobile was being operated by one Lanthier, who was driving down from San Francisco where he had purchased the machine from the Howard Automobile Company, which is the intervenor in the case. It had been purchased on a conditional sales contract, title remaining in vendor until fully paid for, and the sum of approximately $750 is still due as for unpaid installments. In this instance also, a couple of bottles of illicit "moonshine" whisky belonging to Lanthier were being carried in the machine, contained in a suit case reposing in the tonneau thereof. The liquor was "raw"—freshly made—and bore no evidence of the payment of any tax. Lanthier bought it from some salesman who had approached him for that purpose at his garage. No other details of the transaction are in evidence.

In each of the above mentioned proceedings the libel is brought pursuant to the terms of section 3450 of the Revised Statutes (Comp. St. § 6352), and in each instance it is alleged that distilled spirits for use for beverage purposes, upon which certain taxes were due and unpaid under and pursuant to law, were being concealed and removed, and that the "said goods and commodities were concealed, deposited, and removed in said automobile with intent to defraud the United States of said taxes."

In the third case it appears from the facts agreed to at the time of the submission of the cause, that the claimant of the machine, the Robert D. Maxwell Company, was the owner of the automobile in question, and that it had sold the same to one Jose Mapula on a conditional

sales contract, with the usual covenant as to retention of title until all payments were completed, and that a balance of the purchase price in the sum of $747.50 was still unpaid at the time of seizure. The claimant, it is clear, was without any information as to the intent or purpose of Mapula, or any one else, to use the automobile in violation of law in any way, and obviously it did not give its consent to such use. It also appears, however, that Mapula, together with two other individuals jointly concerned with him in the transaction, having the automobile in his possession pursuant to such sale, made use of it to bring whisky across the line from Mexico into the United States without declaring the same and without paying the tax or tariff due thereon as provided by law. Upon this whisky, about 30 gallons in amount, concealed within the automobile, there was tariff duty payable and unpaid. Seizure of the machine and contents was effected by customs officers. Mapula and his companions were regularly proceeded against and sentenced to jail as for a violation of section 593 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841h12). In this case, also, the prayer is that the automobile may be confiscated. Prayer for relief is asked under and pursuant to the terms of sections 593 and 594 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, §§ 5841h12, 5841h14) but, obviously, under the facts alleged and agreed to, the provisions of sections 3059, 3061, and 3062, Rev. Stat. (sections 5761, 5763, and 5764, Comp. Stat.), providing for the strict seizure and forfeiture of any vehicle used to introduce merchandise into the United States "in any manner contrary to law," are applicable and controlling.

The questions involved in the cases revolve around the proposition as to whether an owner of an automobile who has permitted another to use it, either by way of rental or conditional sale or the like, with no knowledge or suspicion of, or consent to, its intended use for an unlawful purpose such as is involved herein, may be compelled to submit to the forfeiture of the automobile under the respective laws applicable and relied upon.

[1] With respect to the first two cases it should be noticed preliminarily that each involved a violation of the National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) as for the sale or transportation of liquor for beverage purposes. In each of the cases a prosecution under the National Prohibition Law was had and a conviction suffered by the party responsible therefor. It should also be noticed that section 26 of the National Prohibition Law (section 10138½mm) provides for a forfeiture of the vehicle used to transport liquor unlawfully, the interest of the owner thereof being forfeited "unless good cause to the contrary is shown," and the forfeiture as against the owner involving a payment of all liens which may be established, according to their priorities, etc. Section 3450, under which the first two proceedings are brought, on the contrary, is much more positive and strict in its nature, and less susceptible of elasticity of application by the court. It provides, substantially, that:

"Whenever any goods or commodities for or in respect whereof any tax is or shall be imposed, or any materials, utensils, or vessels proper or intended to be made use of for or in the making of such goods or commodities are removed, or are deposited or concealed in any place, *with intent to defraud the*

*United States of such tax, or any part thereof,* all such goods and commodities, and all such materials, utensils, and vessels, respectively, shall be forfeited; and in every such case all the casks * * * which shall have contained, such goods· or commodities, respectively, and every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment thereof, * * * shall be forfeited." (Italics supplied.)

This section was originally enacted in 1866 (14 Statutes at Large, p. 151 [Comp. St. § 6352]), as section 14 of a general internal revenue law (14 Stat. at Large, p. 98), and was intended, obviously, to provide a strict, stringent, and drastic remedy against evasion or violation of such internal revenue law with respect to the payment of taxes on cotton, liquor, tobacco, and other designated articles produced or manufactured within the United States. In furtherance of this purpose, and the more easily to ascertain and collect the proper taxes, provision was had for their levy and payment at or near the place of manufacture or production. For instance, in section 2 of the law of 1866 (14 Stat. at Large, p. 98), it was enacted that the tax to be paid upon cotton should be levied upon, and paid by, the producer or holder, within the collection district in which produced, "and before the same shall have been removed therefrom." Provision was also had in the same section for a "removal" of said cotton upon payment of the tax, etc. In a succeeding section (14 Stat. at Large, p. 122) it was provided·that any person, firm, or corporation, manufacturing or producing goods, wares, or merchandise, "sold or removed for consumption or use, upon which taxes are unpaid by law," shall make due return of the same, with their value, etc., so that the proper tax might be laid and paid thereon, etc.· So, also, in a succeeding section (14 Stat. at Large, p. 124) it was required that a proper return of all tobacco "removed for consumption or sale, or removed from the place of manufacture," should be had, so that the appropriate tax might be levied and collected. On page 127 it was provided that, whenever the producer or manufacturer of any goods, wares, or merchandise shall use or consume, "or shall remove for consumption or use," any such goods, "which, if removed for sale, would be liable to taxation," he shall be assessed for the tax upon the goods "so used or so removed for consumption or use." Beginning on page 128, provision was had for a general tax levy upon a long list of designated articles "which shall be·produced and sold, or be manufactured or made and sold, or be consumed or used by the manufacturer or producer thereof, or removed for consumption or use, or for delivery to others than agents of the manufacturer or producer," etc.

[3] These substantially contiguous and generally correlated expressions of the Congress convey to me a clear legislative intent, and that is that the word "remove," as used in section 3450 (section 14 of the above-mentioned act), is not the substantial counterpart of the word "transport," as used in the National Prohibition Law, but that it connotes some ·transfer of the thing involved from some definite place of manufacture, production, origin, or the like, to some other place whereat or wherefrom the collection of the tax imposed upon it by law might be less easily effected. To me, aside from the context, the very use

of the word intrinsically implies some change in fixity of location. This is borne out by a consideration of established usage respecting the word. The Standard Dictionary defines "remove" as "to move or cause to be moved out of a place; transfer from one place to another." The Century says it means "to move from a position occupied; cause to change place; transfer from one point to another; put from its place in any manner."

I am persuaded, therefore, from a careful consideration of the section, induced no less by a study of its terms than from a consideration of the context and of the apparent intention of Congress in enacting it, that it was not intended, and may not be made, to apply to a mere transportation of liquor, made unlawful by the prohibitive provisions of the National Prohibition Law, unless there be also present in the circumstances connected with the transaction, that which could justify the court in indulging in the fair and reasonable inference that there was "an intent to defraud the United States" of the tax payable upon such liquor. In my judgment, without intending to announce a comprehensive schedule of categories, section 3450 may be held to apply to (a) one actually concerned in some way with or in the manufacture of illicit liquor upon which a tax is due and unpaid, and who, with intent to avoid the payment of such tax, removes the liquor from the place where the same was manufactured; or (b) to one who, acting in some way in collusion with such a manufacturer, by aiding or abetting in the removal or concealment of the liquor, may be held to have been inspired with an intent to avoid the payment of the tax and in that wise to defraud the United States government. Seemingly, unless language be stretched beyond its reasonable signification, section 3450 ought not, rationally, to be applicable to a mere transporter or distributor of intoxicating liquor, the person responsible therefor in either event being unacquainted, or perhaps not definitely impressed, with the thought or idea that there is a distilling or other tax payable upon the liquor and that the same is and remains unpaid. In other words, my conclusion is that the penalties provided in the National Prohibition Act are applicable primarily to those who violate the prohibitions of that act; indulging in reasonable inference, it may not be said that a mere violation of that act, going no further than a purchase and transportation or intended distribution of intoxicating liquor, involves an actual intent to "defraud the United States" of the taxes due it as for the unauthorized manufacture of such liquor. Connection in any way, by collusion or otherwise, with such manufacturer, might easily, however, afford a just basis for such inference.

If this reasoning may apply to one actually responsible for the transporting or distributing of such contraband article, a fortiori it should apply to the innocent owner of an instrumentality used to effectuate such transportation or distribution. For these reasons, I am persuaded that the libels in the first two cases should each be dismissed, because of the fact that there is not sufficient evidence upon which the court may indulge in the inference that there was an intent to defraud the United States of taxes due on the liquor had and concealed or transported. I have not overlooked the provisions of section 3333 of

the Revised Statutes (Comp. Stat. § 6130), respecting burden of proof. This section, however, deals only with burden of proof, and not with the inference to be drawn from the proof actually adduced. In the absence of any showing by the claimant or possessor of liquor upon which the tax was unpaid, the court might reasonably infer the existence of an intent to defraud.

If there be that in the situation sufficient to justify the United States attorney in proceeding against the automobiles in question under the provisions of section 26 of the National Prohibition Act, considering the nature and extent of the third party claims which have been filed, the dismissal of the libels herein will be without prejudice to such action, if the United States attorney shall be advised as to the propriety thereof. The views announced hereinabove seem to be supported by the holdings in United States v. One Kissel Automobile (D. C.) 289 Fed. 120; United States v. One Kissel Automobile (C. C. A.) 296 Fed. 688; United States v. One Ford Automobile (D. C.) 286 Fed. 204; United States v. One Studebaker Automobile (D. C.) 298 Fed. 191; United States v. One Premier Automobile (C. C. A.) 297 Fed. 1007; United States v. One Ford Automobile (D. C.) 292 Fed. 207; The Cherokee (D. C.) 292 Fed. 212.

[2] The other case, No. 1358–B, rests upon an entirely different state of facts. In that case it is admitted that, though the owner of the automobile, selling the same upon a conditional sales contract, knew nothing of the actual or intended unlawful use of the same in bringing liquor across the line from Mexico into the United States, yet the automobile, in charge of the person having the right to the use of the same, was actually employed in bringing liquor across the line and concealing and facilitating the concealment thereof, in violation of law requiring payment of the duties thereon. Under these circumstances, giving force and effect to the statutes involved, and pursuant to the holdings in United States v. One Black Horse (D. C.) 147 Fed. 770, and particularly Goldsmith Grant Company v. United States, 254 U. S. 505, 41 Sup. Ct. 189, 65 L. Ed. 376, the want of knowledge or consent on the part of the owner of the automobile of the unlawful use being made of the same is no defense against its forfeiture by the government. The sections of the Tariff Act and of the Revised Statutes referred to hereinabove cover the case at bar like a blanket, and a proper enforcement of the terms of the same requires the court to decree the forfeiture of the instrumentality obviously made use of for the purpose of defrauding the government of the tariff duties imposed and unpaid. That other considerations—e. g., a mere desire to bring contraband goods into the United States—may have attached to the transaction does not detract from the force of the one adverted to. The knowledge, purpose, and intent of the person lawfully operating the automobile to evade and violate the customs laws makes it incumbent upon the court to decree the forfeiture of the offending thing.

In this case, therefore, a decree will go for the government, as for the forfeiture of the automobile in question, as prayed for.