## UNITED STATES et al. v. MILSTONE.

(Court of Appeals of District of Columbia. Submitted January 7, 1925. Decided March 2, 1925.)

### No. 4197.

1. Internal revenue ⬤⟹12—Unlawfully manufactured intoxicating liquor, seized during transportation, is subject to tax.

Under Revenue Act 1866, § 14, Rev. St. § 3450 (Comp. St. § 6352), National Prohibition Act, § 26 (Comp. St. Ann. Supp. 1923, § 10138½mm), and Act Nov. 23, 1921, § 5 (Comp. St. Ann. Supp. 1923, § 10138⅘c), unlawfully manufactured intoxicating liquor, seized while being transported, is subject to tax in nature of penalty, though, to warrant imposition of penalties provided for by section 3450, transportation must have been for purpose of evading tax.

2. Internal revenue ⬤⟹46—Proceeding under Revenue Act to condemn automobile used to unlawfully transport intoxicating liquor, rather than under Prohibition Act, held unwarranted.

Where rented automobile, being unlawfully used in transportation of intoxicating liquor for beverage purposes, was abandoned, and its owner not apprehended, government was not warranted in proceeding under Rev. St. § 3450 (Comp. St. § 6352), thereby preventing innocent owner from reclaiming property, rather than under National Prohibition Act, tit. 2, § 26, notwithstanding section 35 (Comp. St. Ann. Supp. 1923, §§ 10138½mm, 10138½v), and Act Nov. 23, 1921, § 5 (Comp. St. Ann. Supp. 1923, § 10318⅘c).

In Error to Municipal Court of District of Columbia.

Proceeding between the United States and the Metropolitan Warehouse Company and Philip Milstone, trading as the "Drive It Yourself" Company. Judgment for the latter, and the former bring error. Affirmed.

Peyton Gordon and J. H. Burnett, both of Washington, D. C., for plaintiffs in error.

J. B. Stein, of Washington, D. C., for defendant in error.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge United States Court of Customs Appeals.

ROBB, Associate Justice. This is a writ of error to the municipal court of the District. The case was disposed of below on an agreed statement of facts, from which it appears that on April 26, 1924, "while in the act of transporting ten gallons of corn liquor," a Ford automobile was seized in behalf of a deputy collector of internal revenue. The automobile just prior to the seizure had been in the possession of James Jackson, who had hired it from the defendant in error, who had no knowledge that Jackson intended to use it for an illegal purpose. Just before the seizure Jackson abandoned the automobile, and the government concedes "that, had the driver of the automobile been apprehended, the government would have proceeded under the Prohibition Act." Defendant in error tendered a bond, under section 26 of title 2 of the Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½mm), but the government declined to release the automobile.

The sole question, therefore, as the agreed statement of facts recites, is whether "the United States might proceed under section 3450, Revised Statutes, notwithstanding the circumstances herein set forth, under claim that the tax on said liquor had not been paid." The court below answered this question in the negative.

Section 3450, R. S. (Comp. St. § 6352), authorizes the seizure and forfeiture of "every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment" of any goods or commodities upon which any tax is or shall be imposed, "with intent to defraud the United States of such tax or any part thereof."

Section 26 of title 2 of the National Prohibition Act (41 Stat. 315 [Comp. St. Ann. Supp. 1923, § 10138½mm]), provides in part:

"When the Commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating liq-

uors found therein being transported contrary to law. Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile, boat, air or water craft, or any other conveyance, and shall arrest any person in change thereof. Such officer shall at once proceed against the person arrested under the provisions of this title in any court having competent jurisdiction; but the said vehicle or conveyance shall be returned to the owner upon execution by him of a good and valid bond, with sufficient sureties, in a sum double the value of the property, which said bond shall be approved by said officer and shall be conditioned to return said property to the custody of said officer on the day of trial to abide the judgment of the court."

Section 35 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, §. 10138½v) reads as follows:

"All provisions of law that are inconsistent with this Act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws. This act shall not relieve any one from paying taxes or other charges imposed upon the manufacture or traffic in such liquor. No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against and collected from the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers. The payment of such tax or penalty shall give no right to engage in the manufacture or sale of such liquor, or relieve any one from criminal liability, nor shall this act relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws.

"The Commissioner, with the approval of the Secretary of the Treasury, may compromise any civil cause arising under this title before bringing action in court, and with the approval of the Attorney General he may compromise any such cause after action thereon has been commenced."

Section 5 of an act supplemental to the National Prohibition Act (42 Stat. 222, 223, Act Nov. 23, 1921 [Comp. St. Ann. Supp. 1923, § 10138⅘c]), provides:

"That all laws in regard to the manufacture and taxation of and traffic in intoxicat-

ing liquor, and all penalties for violations of such laws that were in force when the National Prohibition Act was enacted, shall be and continue in force, as to both beverage and nonbeverage liquor, except such provisions of such laws as are directly in conflict with any provision of the National Prohibition Act or of this act; but if any act is a violation of any of such laws and also of the National Prohibition Act or of this act, a conviction for such act or offense under one shall be a bar to prosecution therefor under the other. All taxes and tax penalties provided for in section 35 of title II of the National Prohibition Act shall be assessed and collected in the same manner and by the same procedure as other taxes on the manufacture of or traffic in liquor."

[1] The effect of the Act of November 23, 1921, to which reference has just been made, was the re-enactment of all laws in regard to the manufacture, taxation of and traffic in intoxicating liquor, except such provisions as are directly in conflict with the provisions of the National Prohibition Act. United States v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358. Unquestionably, therefore, intoxicating liquor seized while being transported is subject to tax upon such seizure. Although such an exaction is denominated a tax, it is rather in the nature of a penalty.

Section 3450, R. S., was originally enacted in 1866 as section 14 of a general internal revenue law, and provided drastic penalties for any violation of that law respecting payment of taxes on various enumerated articles. 14 Stat. 98. The underlying purpose of this section was to prohibit the transfer of any taxable article from the place of manufacture, production or origin to some other place where payment of the tax might be avoided. In other words, this was purely a revenue measure, and the courts have recognized that the terms "removed" and "removal" in section 3450 are to be given an interpretation consistent with the scope and purpose of the act. See Lewis v. U. S. (C. C. A.) 280 F. 5; U. S. v. One 1920 Premier Automobile (C. C. A.) 297 F. 1007; U. S. v. One Studebaker Automobile (D. C.) 298 F. 191; U. S. v. Mangano (C. C. A.) 299 F. 492; and U. S. v. One Buick Automobile (D. C.) 300 F. 584. These decisions concur in the view that section 3450, when construed in the light of its scope and purpose, embraces only transportation for evasion of tax.

[2] The purpose of the National Prohibition Act was very different from that of the revenue law we have been discussing. Its purpose was absolutely to prohibit the manufacture and transportation of intoxicating liquor for beverage purposes. Under the revenue law a specified tax upon all distilled spirits was required to be paid by attaching to the container advance paid revenue stamps, with which every manufacturer was required to be supplied. The Prohibition Act, however, expressly forbids stamps, if the liquor is intended for beverage purposes. Under the facts of this case, the primary offense of Jackson, the driver of the automobile, was the illegal possession and transportation of intoxicating liquor for beverage purposes. The failure to pay the revenue tax was a mere incident of the illegal possession and transportation. This must be so, since the possession and transportation were illegal in any event, regardless of the payment or nonpayment of the tax. In fact, there was no way in which Jackson might have paid the tax without inviting immediate prosecution for illegal possession. How, then, may it be said in reason that mere illegal transportation constitutes a "removal" of liquor "with intent to defraud the United States of such tax," within the meaning of section 3450? Finding Jackson in the illegal possession of intoxicating liquor, the United States might have enforced, as against him, the provisions of the revenue law relative to the nonpayment of taxes, subject to the reservation in the Act of November 23, 1921 (42 Stat. 222), that, if any act is a violation of any revenue law and also of the Prohibition Act, a conviction under one shall be a bar to a prosecution under the other. Of course, as against Jackson, the right of forfeiture of any vehicle used in the illegal act was undoubted.

But section 26 of the Prohibition Act permits an innocent owner of a vehicle used in the illegal transportation of intoxicating liquor to reclaim his property. Unless observance is given to the distinction we have found, section 26 is practically without force, for in every case of illegal transportation the government may proceed under section 3450 and deprive the innocent owner of the right given him under section 26. Certainly Congress did not intend such a result. Observance of this distinction between the two acts gives full force and effect to all their provisions and to the evident intent of Congress.

It results that the judgment must be affirmed.

Affirmed.