## THE DANTE.

(District Court. E. D. Louisiana, New Orleans Division. December 7, 1926.)

No. 18487.

**1. Shipping ⬅➡16—Boat licensed for coastwise trade held subject to forfeiture for being employed in illegal importation of liquor (Rev. St. § 4377 [Comp. St. § 8132]).**

A gas motor boat, licensed for the coasting trade, a condition of the license being that she should ·not be employed in any trade by which the revenue of the United States would be defrauded, which was found near the coast with a cargo of intoxicating liquor, being unloaded on shore and bearing foreign marks, *held* subject to forfeiture under Rev. St. § 4377 (Comp. St. § 8132), for being employed in a trade other than that for which she was licensed.

**2. Shipping ⬅➡16—Want of knowledge of owner not a defense to suit for forfeiture of vessel for violation of license (Rev. St. § 4377 [Comp. St. § 8132]).**

A vessel is the offending thing in engaging in an employment other than that for which she is licensed, and which subjects her to forfeiture under Rev. St. § 4377 (Comp. St. § 8132), and the want of knowledge or the good faith of the owner is not a defense.

In Admiralty. Suit by the United States against the gas motor boat Dante. Decree of forfeiture.

Edmond E. Talbot, Asst. U. S. Atty., of New Orleans, La.

Warren Doyle, of New Orleans, La., for respondent.

BURNS, District Judge. [1] The libel for forfeiture, under R. S. § 4377 (Comp. St. § 8132), alleges that the motor boat Dante was seized by a customs officer while she lay afloat, off Chaland Bayou, in the Gulf of Mexico, within the territorial jurisdiction of this court; that she was under license granted the owner, one Marine Gerica, to engage in the coasting trade, a condition of the license being that she would not be employed in any trade whereby the revenue of the United States would be defrauded, or be used for any other employment than as specified in said license.

When discovered and seized, the Dante was unmanned, with a cargo of 889 5-gallon tins of intoxicating liquor intended for beverage purposes, which was being transported in fraud of the revenue laws, to defraud the revenue of the United States, and so was engaged in a trade other than that for which she was licensed; that is to say, the Dante was engaged in the unlawful business of transporting such liquor in violation of the National Prohibition Act (Comp. St. § 10138¼ et seq.), and without a permit from the internal revenue, and without a manifest, in violation of the custom laws, and that she was attempting to import merchandise on·which no duty had been paid.

Upon a hearing, the evidence sustained these charges and showed that the Dante was within a quarter mile of shore when seized, and therefore within the three-mile limit. A letter intended for mailing was found on board her, addressed by some one aboard the steamship La Isla of foreign registry. The cargo had been partly unloaded and what approximated the deck load was found ashore nearby. The foreign marks on this unloaded cargo, and its general appearance, corresponded exactly with the markings and appearance of the cargo remaining in the hold.

The owner claimant disavows all knowledge of the use to which his vessel was put. He also contends that the vessel is not liable to forfeiture under R. S. § 4377, since she did not engage in other than the coastwise trade; that is, she did not engage in foreign trade or in the fisheries, notwithstanding she was engaged in unlawful acts.

The owner claimant, Gerica, offered testimony in support of the first contention, going to show that the vessel had been under charter or hire at $12.50 per day carrying oysters and fruit from points on the lower Mississippi to New Orleans, and gasoline and general cargo down; that she had been damaged about December 9, 1925, and returned to his shipyard for repairs; that these repairs were completed by Saturday, December 19th, and she had then been moored to his wharf, near both the shipyard and his residence; that on December 20th, during his absence, she was removed, and he learned, on or about December 24th, of her seizure on December 21st.

Testifying in his own behalf, he said that he was operating a shipyard; that he took the boat on speculation, in payment of a debt; that, with repairs and a new engine, the Dante had cost about $6,000 or $7,000; that he had gone on a fur-buying trip in a small boat on Saturday, December 19th, after moving the Dante alongside his wharf, and when he returned on Sunday his wife told him that two men had taken the boat, saying that the former charterer had sent for it; that he hunted for it on a trip down the river, but never telephoned or otherwise communicated with the former charterer in New Orleans until four days later, when he came to the city. He then saw a newspaper account of the seizure.

Upon all of the evidence I am persuaded to believe that the ·defendant knew that the former charterers did not need his boat any

longer, when they returned it to him in a damaged condition on December 9th, and that a man of his intelligence, in his situation, would not have behaved in the manner he claims he did, if a valuable boat, such as this was, had been unceremoniously taken from its mooring place in the manner he describes.

[2] The want of knowledge or good faith on the part of the owner, however, is a negligible consideration. It is the act of the vessel, or the fact of the vessel being engaged in unlawful trade, contrary to the license, that is defined as an offense. The vessel is the offending thing, and, as such, is liable to forfeiture.

This defense might be interposed, if the proceeding was brought under section 26 of title 2 of the National Prohibition Act (Comp. St. § 10138½mm), but I am persuaded that the remedy made available to the government by that act is merely cumulative. The violation of the Prohibition Act, and probably of other statutes, was in addition to the specific violation of R. S. § 4377. U. S. v. Story (C. C. A.) 294 F. 518; The Cherokee (D. C.) 292 F. 212.

The opinions in The Esther M. Rendle, 13 F.(2d) 839 (No. 1930, decided in the October term, 1925, by the United States Circuit Court of Appeals, First Circuit), and also in The Underwriter (C. C. A.) 13 F.(2d) 433. The Resolution, Fed. Cas. No. 11,709; The Mars (C. C. Mass.) Fed. Cas. No. 15,723; United States v. One Black Horse (D. C.) 147 F. 770; U. S. v. One Buick Automobile (D. C.) 300 F. 584; Goldsmith Grant Company v. United States, 254 U. S. 505, 41 S. Ct. 189, 65 L. Ed. 376—cited on behalf of the government, are persuasive here that innocence or want of knowledge of the use to which the offending thing is put is beside the question. It is the illegal use which works the forfeiture prescribed by this and other such quasi penal statutes; the innocence or guilt of the owner being accidental.

The Dante was assuredly bound by the conditions and terms recited in her license to refrain from carrying on any other trade than that for which she was licensed, the conditions of the license providing specifically that she should not be employed in any trade during the life of the license whereby the revenue of the United States should be defrauded, or for any other employment than specified therein. By the terms of the statute she became ipso facto forfeited upon engaging in illicit traffic, in the course of which the various customs and internal revenue laws, as well as the National Prohibition Act, were

17 F.(2d)—20

variously violated, as set out in the libel of information.

Accordingly a decree of forfeiture will be entered.