## UNITED STATES v. ONE 1942 STUDE-BAKER (Engine No. 204313, Serial No. G181439).

### No. 1573.

District Court, D. Delaware.

April 3, 1945.

As Amended April 12, 1945.

W. Thomas Knowles, Asst. U. S. Atty., of Wilmington, Del., and Samuel Cohen, Atty. in Charge, Alcohol Tax Unit, of Newark, N. J., for the United States.

Leslie H. Gluckman, of Wilmington, Del., for intervener.

LEAHY, District Judge.

The libel was amended and is for the forfeiture and condemnation of a 1942 Studebaker four-door sedan. The action is brought under the provisions of 26 U.S. C.A. Int.Rev.Code, §§ 3321 and 3116. The registered owner, Evan Spring (known as "Bear" Spring), has made no claim, but the Wilmington Morris Plan Bank claims title to the car as an unpaid conditional vendor and has intervened to

dispute the government's right to forfeiture.

The facts adduced at the hearing show that on June 13, 1944, Alice M. Britton went to a depot of one of Wilmington's taxi-cab companies and talked to Spring (who, as far as the evidence shows, had no connection with such company) relative to the purchase of a fifth gallon of distilled spirits, i. e., she wanted a bottle of whiskey. After some discussion, Spring went into a restaurant located next door to the cab company depot and came out with the bottle. Spring asked the Britton woman where she was going and, upon being advised that she was going home, which was only a short distance from where they were, offered to drive her in his car. Britton testified that soon after they entered the car he handed her the bottle and received payment for it. While the government argued that the sale took place in the car, and the evidence is not clear, the fact is found here that a sale was made prior to either party's entering the car, and that physical possession of the bottle may or may not have been transferred in the car.

Spring drove the Britton woman to her home. After she emerged from the car she delivered the bottle to certain state enforcement officers, for whom she was acting in the transaction. It appears that after the officers received the bottle they proceeded to the city police station. They were followed there by Spring, who forcibly attempted to take the bottle from one of the officers as he emerged from the car. Both officers then attacked Spring. During the struggle, which included hitting Spring over the head with a blackjack, the bottle several times dropped on the cement pavement but without breaking. The officers were still unsuccessful in their attempt to secure the bottle. Finally, in order to subdue Spring, one of the officers shot him after both verbal and blackjack threats proved unavailing. Upon being shot, Spring apparently became further piqued and threw the bottle to the pavement, causing it to break. The state liquor enforcement officers, whose forces by this time had been augmented by the appearance of several city policemen, gathered up parts of the broken bottle. While the evidence is not as clear as it might be that the broken parts were of the bottle in question (because, for example, there was some testimony that parts of the bottle came from under a hedge some distance from where the scuffle and shooting took place), we nevertheless find that they were from the bottle in question. The neck of the bottle was all in one piece and contained no strip stamp. Apparently a strip stamp, when on a bottle, is invariably attached to the neck of the bottle.

The evidence is inconclusive as to whether sufficient liquid from the bottle was captured to permit a chemical analysis, but it is clear that no chemical analysis was, in fact, made. There was, however, persuasive testimony from the state enforcement officers, who have had many years experience with liquors, that the bottle contained whisky. This is accepted as the fact.

The intervener moves to dismiss on the grounds (1) the amendment to the libel should not be allowed because it introduces a new cause of action different from that declared in the original libel; and (2) the forfeiture provision of Sec. 3321[1] does not apply to this transaction.

Before discussing the main problem here involved, some consideration must be given to a certain problem of evidence.

1. As stated, there was no strip stamp on the bottle. It was possible to arrive at this conclusion, however, only because the ordinary rules of evidence do not apply in admiralty, 28 U.S.C.A. § 637. At the trial, the broken pieces of the bottle were marked for identification but inexplicably were not offered in evidence and the court does not have this evidence before

---

[1] The pertinent provisions provide as follows:

"(1) Goods. Whenever any goods or commodities for or in respect whereof any tax is or shall be imposed, or any materials, utensils, or vessels proper or intended to be made use of for or in the making of such goods or commodities *are removed, or are deposited or concealed in any place, with intent to defraud the United States of such tax,* or any part thereof, all such goods and commodities, and all such materials, utensils, and vessels, respectively, shall be forfeited. (Emphasis supplied)

\* \* \* \* \* \*

"(3) Conveyances. Every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment thereof, respectively, shall be forfeited."

it at the time of the present writing. Since the best evidence rule applies to inscribed chattels, where the inscription affects the rights of the parties or is important as evidence; Wigmore, Evidence, Secs. 1182, 1183; one would not normally consider evidence of the non-existence of the strip stamp, for the neck of the bottle would obviously be the best evidence. But since the rule is otherwise in admiralty, the finding is made that the strip stamp was not on the bottle, although this does not necessarily mean that the tax was not paid. That the tax was unpaid is developed from certain other circumstantial testimony. That testimony was that while the bottle contained the label of a well-known brand, the bottle was not, in fact, one of that particular distiller. There was also testimony that Spring had made no application for stamps, or for a stamp certificate to engage in the retail liquor business, and if he had made application the records would show the fact. This testimony is sufficient to show that the tax was not paid, but for the reasons discussed more fully hereafter, it is insufficient to show that Spring intended to defraud the government.

2. Was there a removal within the meaning of the statute? The government contends that the ride from the City Cab Company to the Britton woman's home was a removal within the meaning of the statute. "Removal" has not been shown, no matter what the answer to the construction question is. The use of the car was purely a fortuitous circumstance and had nothing to do with the substance of the transaction. The sale of the bottle of whiskey completed the substance of the transaction. The authorities support this conclusion.

In United States v. One Buick Automobile, D.C., 300 F. 584, 587, three cases were involved, but in the first one it appeared that one McGregor had agreed to obtain and deliver a small quantity of liquor to a person who afterwards turned out to be a federal prohibition agent. There was transported in his car, either lying on the seat or in his pocket, two pints of illicit "moonshine" whiskey, upon which no distilling or other tax had been paid. It appeared from the evidence that McGregor went to a residence in Los Angeles, not shown to have been the place where the liquor was actually manufactured or to have been in any way connected with the manufacture or distilling of it, and obtained the liquor which he later sold. A rental company, as owner of the car, resisted the forfeiture. In dismissing the libel in this first case, the Court said: "These substantially contiguous and generally correlated expressions of the Congress convey to me a clear legislative intent, and that is that the word 'remove,' as used in section 3450 [26 U.S.C.A. Int.Rev. Code § 3321], is not the substantial counterpart of the word 'transport,' * * * but that it connotes some transfer of the thing involved from some definite place of manufacture, production, origin, or the like, to some other place whereat or wherefrom the collection of the tax imposed upon it by law might be less easily effected." This case was cited with approval in United States v. One Buick Sedan, D.C., 1 F.2d 997, and many other similar cases which are cited in the margin.[2] These cases hold that removal as used in the statute requires either that the liquor be "moonshine" or that it be removed from the place of manufacture or distilling or that there be some other factor indicating that the tax had obviously not been paid. The ratio of these decisions is that since the government seeks forfeiture from circumstantial evidence it must at least produce facts and circumstances which warrant the inference that the vehicle was removing liquor with intent to defraud the United States of a just tax due. The circumstantial evidence in this case is insufficient to warrant such an inference, notwithstanding the fact that the bottle was not the bottle of the manufacturer whose label it bore.

The government seeks aid from United States v. One 1937 Model Ford Coach, D.C., 57 F.Supp. 977. That case does not meet the point that must be decided here, for there the liquor was contained in fruit jars which the court judicially noticed are generally used by those south of the Mason-Dixon line as containers for non-

2 United States v. Milstone, 55 App.D. C. 356, 6 F.2d 481; United States v. One Ford Automobile, D.C., 286 F. 204; United States v. One Kissel Automobile, D.C., 289 F. 120; United States v. One Studebaker Automobile, D.C., 298 F. 191; United States v. One 1920 Premier Automobile, 9 Cir., 297 F. 1007; United States v. One Chevrolet Coach, D.C., 25 F.2d 917; United States v. One Ford Coupe, D.C., 26 F. Supp. 867.

tax-paid white corn liquor. In short, the inference was a reasonable one.

The cases and the reasons stated therein showing that there was no removal, are also sufficient to show that there was no "deposit" or "concealment" within the meaning of the statute. Cases dealing with attempted forfeiture for the transportation of narcotics are illuminating and sustain the conclusion here. See United States v. One Ford Coupe, D.C., 26 F.Supp. 867; United States v. One Ford Automobile Truck, D.C., 286 F. 204.

3. Was there, in any event, an intent to defraud? While intent to defraud may be proved by the circumstances, that burden at all times and in every case is upon the government. In the various cases finding intent from the circumstances; United States v. One 1937 Model Ford Coach, D.C., 57 F.Supp. 977; United States v. One Packard Roadster Automobile, D.C., 29 F.2d 424; General Motors Acceptance Corporation v. United States, 8 Cir., 32 F.2d 121; One 1941 Ford ½ Ton Pickup Automobile Truck v. United States, 6 Cir., 140 F.2d 255; Martin v. United States, 10 Cir., 99 F.2d 236; United States v. C.I.T. Corporation, 3 Cir., 31 F.2d 680; it appears that the furtive character of the transaction is the important circumstance which the courts have considered in finding the intent. In United States v. C.I.T. Corporation, supra, for example, the court sustained a forfeiture on evidence that a truck with a load of non-tax-paid beer had been abandoned by the driver after an attempt to escape the officer. In the case at bar the circumstances do not support a reasonable inference that there was a removal with intent to defraud the federal government. Spring's scuffle with the state inspectors is not a circumstance which can be used to show that he was violating the federal law. It is clear from the evidence that Spring knew that the officers were officers of the state and the inference, if any, to be drawn from the struggle would be that he feared that he had violated some law or regulation of the state of Delaware.

There must, of course, be removal plus intent to defraud; and it is clear from the facts adduced at the hearing that irrespective of the removal question, there was no intent to defraud. The whiskey was not taken from a distillery or manufacturing place and was not in a shaped bottle or container other than the type commercially used in the sale of liquor. There are cases which hold that single factors such as the trifling amount of the tax do not necessarily show lack of intent to defraud. The amount of the tax which would be due here was trifling. Yet when all the circumstances are taken together, they are not sufficient to lead to the conclusion that there was an intent to defraud by Spring within the meaning of the statute. Many cases lend support to the views so far discussed. United States v. One Buick Automobile, D.C., 300 F. 584; United States v. One Buick Sedan, D.C., 1 F.2d 997; United States v. One Dodge Coupe, D.C., 34 F.2d 942; United States v. One 1939 Chevrolet Sedan, D.C., 35 F.Supp. 142, 143.

United States v. One 1939 Chevrolet Sedan, supra, is pertinent with respect to intent. There, the government sought forfeiture on the ground that the automobile was used in concealing and removing non-tax-paid moonshine whiskey with intent to defraud. It appeared that the car was driven into the yard of a third party, that the driver and a negro got out of the car, whereupon the driver unlocked the trunk from which the negro took two five-gallon glass jugs and placed them in a La Salle automobile that was parked in the yard. The La Salle was then driven into the garage by the man in whose yard the cars were parked. An investigation of the contents of the La Salle revealed that it contained 18 five-gallon glass jugs as well as some sugar. It was further testified that there was a small quantity of moonshine whiskey in each of the 18 jugs, that 8 or 10 of these jugs were drained, and that the total yield of liquor was about one-half a pint. In finding lack of intent, the court, in part, said:

"* * * The Federal tax on the liquor in each jug would be approximately 4 cents. So, giving the government the benefit of every doubt, it stood to lose 8 cents. * * * This brings us now to the question of whether the driver of the car, who was an old head in the moonshine liquor business, and fully aware of the law's penalties, really intended to defraud the government out of that 8-cent tax, and thereby subject himself to penal servitude and his sister's new car to forfeiture, or whether or not he merely intended to take some empty jugs to his neighbor. Perhaps he wanted a refill and would have gotten it had not the

officers seized the whole layout and prevented a subsequent fruition in forfeiture.

"It is the opinion of the Court, therefore, that the inconsequential amount of contraband liquor found in the jugs is insufficient in law to establish a presumption of an intent to defraud the government of the tax on the part of the driver of the car in question, and that without such an intent so to defraud there can be no forfeiture. The libel is dismissed."

 The finding here is that there was no removal, deposit or concealment within the meaning of the statute nor was there any evidence to support a finding of an intent to defraud the United States. The court denies the claimant's motion to disallow the amendment to the libel on the ground that if the amendment is allowed to stand, nevertheless there is no additional right to forfeiture on the ground stated in such amended libel. In order to support its charge that Spring was engaged as a retail liquor dealer, the government relies solely upon the testimony of the Britton woman that at some time prior to the occurrences already mentioned, she had purchased a bottle of whiskey from Spring. The credibility of the testimony of a policeman's decoy is invariably accepted with a certain amount of skepticism. If a jury, as a fact-finding body, has the right to reject the testimony of any witness in its entirety, a court when called upon to make a fact finding has the same power. Under the particular circumstances of this case and the demeanor of the witness on the stand, the Britton testimony as to the prior purchase is rejected.

The amended libel should be dismissed.